CMR

2:18-4426

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
TONY MASTOPIETRO, Individually and On Behalf of All Others Similarly Situated,

**(b)** County of Residence of First Listed Plaintiff   MILWAUKEE CTY., WI
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
KASKELA LAW LLC
201 KING OF PRUSSIA ROAD, SUITE 650
RADNOR, PA 19087   (888) 715 - 1740

## DEFENDANTS
TREVENA INC., MAXINE GOWEN, and ROBERTO CUCA,

County of Residence of First Listed Defendant   CHESTER CTY., PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. §§78j(b) and 78t(a)
Brief description of cause:
VIOLATION OF THE FEDERAL SECURITIES LAWS

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE   HONORABLE CYNTHIA M. RUFE   DOCKET NUMBER   18-CV-4378

DATE
10/15/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE

OCT 15 2018

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**18    4426**

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: C/O KASKELA LAW LLC, 201 KING OF PRUSSIA ROAD, SUITE 650, RADNOR, PA

Address of Defendant: _____ 955 CHESTERBROOK BLVD., SUITE 200, CHESTERBROOK, PA

Place of Accident, Incident or Transaction: _____

---

M. RUFE     Date Terminated: _____

THIS CASE IS RELATED TO: *Judge Rufe*

CIVIL ACTION NO. 18-cv-4378
CRIMINAL NO.

ASSIGNED TO:

| | Yes | No |
|---|---|---|
| ne year | ☐ | ☐ |
| rior suit | ☑ | ☐ |
| rlier | ☐ | ☐ |
| l rights | ☐ | ☐ |

w pending or within one year previously terminated action in

204351

DATE: _____     X _____     _____
                         *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

---

CIVIL: (Place a √ in one category only)

A.      *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☑ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
     *(Please specify):* _____

B.      *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
     *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, ___ D. SEAMUS KASKELA ___, counsel of record or pro se plaintiff, do hereby certify:

- ☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☐ Relief other than monetary damages is sought.

DATE: 10/15/2018     _____     204351
                     *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

OCT 15 2018



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

TONY MASTOPIETRO, Individually and On  :
Behalf of All Others Similarly Situated,  :  CIVIL ACTION
                v.  :
                               :
TREVENA INC., MAXINE GOWEN, and  :  18 NO.   4 4 2 6
ROBERTO CUCA,  :

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.)  (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.

| OCTOBER 15, 2018 | D. SEAMUS KASKELA | PLAINTIFF |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (888) 715 - 1740 | (484) 258 - 1585 | SKASKELA@KASKELALAW.COM |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

OCT 15 2018

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TONY MASTOPIETRO, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TREVENA INC., MAXINE GOWEN, and ROBERTO CUCA,<br><br>Defendants. | Case No. **18**  4426<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Tony Mastopietro ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Trevena, Inc. ("Trevena" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Trevena securities between May 2, 2016 and October 9, 2018, both dates inclusive (the "Class Period"), seeking to recover

1

damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Trevena is a biopharmaceutical company developing innovative therapies based on breakthrough science to benefit patients and healthcare providers confronting serious medical conditions. The Company's Common Stock is listed and traded on NASDAQ Global Select Market ("NASDAQ") under the symbol "TRVN."

3.      The Company is currently developing OLINVO (oliceridine) Injection, touted as a next generation IV analgesic for the management of moderate-to-severe acute pain in the hospital and similar settings and has been granted Breakthrough Therapy designation by the United States Food and Drug Administration ("FDA").

4.      After the Company completed a Phase 2 trial of OLINVO, it issued a press release on May 2, 2016, stating that "[it] has reached general agreement with the FDA on key elements of the Phase 3 program to support a New Drug Application (NDA) for oliceridine[.]"

5.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the FDA had not agreed to key elements of the Company's Phase 3 trial for oliceridine (TRV130); (ii) the FDA was unlikely to approve oliceridine (TRV130) based on the Company's Phase 3 trial; and (iii) as a result, Trevena's public statements were materially false and misleading at all relevant times.

6.      On October 9, 2018, it was revealed that the FDA informed the Company at a meeting with the agency in 2016, that the FDA "did not agree with the proposed dosing in the

Phase 3 studies," the proposed primary endpoint, or the "proposed non-inferiority (NI) margin for comparing morphine to oliceridine."

7.     Following this news, shares of Trevena's common stock fell more than 64% on October 9, 2018 to close at $1.07 per share.

8.     On October 11, 2018, the Company announced that the FDA denied its New Drug Application for oliceridine.

9.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

12.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Trevena's principal executive offices are located within this Judicial District.

13.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of a national securities exchange.

3

## PARTIES

14.     Plaintiff, as set forth in the attached Certification, acquired Trevena securities at artificially inflated prices during the Class Period and were damaged upon the revelation of the alleged corrective disclosures.

15.     Defendant Trevena is incorporated in Delaware, with its principal executive offices located at 955 Chesterbrook Blvd., Suite 200, Chesterbrook, Pennsylvania.   Trevena's common stock is traded on the NASDAQ, under the symbol "TRVN."

16.     Defendant Maxine Gowen ("Gowen") has served at all relevant times as the Company's President and CEO.  Gowen retired as President and CEO on October 1, 2018.

17.     Defendant Roberto Cuca ("Cuca") has served at all relevant times as the Company's Chief Financial Officer.

18.     The Defendants referenced above in ¶¶ 16 – 17 are sometimes referred to herein as the "Individual Defendants."

19.     The Individual Defendants possessed the power and authority to control the contents of the Company's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

4

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Trevena is a biopharmaceutical company developing innovative therapies based on breakthrough science to benefit patients and healthcare providers confronting serious medical conditions.

21.     The Company is currently developing OLINVO, touted as a next generation IV analgesic for the management of moderate-to-severe acute pain in the hospital and similar settings and has been granted Breakthrough Therapy designation by the FDA. OLINVO was specifically designed to deliver the pain relief of a conventional IV opioid, with fewer associated adverse effects via its biased ligand mechanism of action. OLINVO is an investigational product and has not been approved by the FDA or any other regulatory agency.  The Company expects OLINVO to be a Schedule II controlled substance.

### Materially False and Misleading Statements Issued During the Class Period

22.     The Class Period begins on May 2, 2016, when the Company filed a Form 8-K with the SEC, attaching as Exhibit 99.1 a press release issued that same day titled: "Trevena Announces Successful End-of-Phase 2 Meeting with FDA and Outlines Phase 3 Program for Oliceridine." The press release stated, in relevant part:

### *Trevena Announces Successful End-of-Phase 2 Meeting with FDA and Outlines Phase 3 Program for Oliceridine*

— Pivotal efficacy studies to start in 2Q 2016, with topline data expected in 1Q 2017, and NDA filing expected in 2H 2017 —

— Phase 3 program includes comparisons to both placebo and morphine —

— Webcast and call scheduled for today at 5:30 pm EDT —

Trevena, Inc. (NASDAQ: TRVN), a clinical stage biopharmaceutical company focused on the discovery and development of biased ligands targeting G protein

coupled receptors, today announced the successful completion of the End-of-Phase 2 Meeting process with the United States Food and Drug Administration (FDA). *The company has reached general agreement with the FDA on key elements of the Phase 3 program to support a New Drug Application (NDA) for oliceridine (TRV130), to which the FDA has granted Breakthrough Therapy designation.*

*"We are very pleased with the outcome of our End-of-Phase 2 discussion with the FDA," said Maxine Gowen, Ph.D., chief executive officer. "We appreciate the valuable guidance the FDA has provided, and look forward to continuing a constructive relationship as we advance our Phase 3 registration program.* We remain focused on bringing oliceridine to market as a new and potentially differentiated analgesic for patients and caregivers seeking alternatives to conventional opioids."

### End-of-Phase 2 meeting

The FDA agreed that pivotal efficacy trials in bunionectomy and abdominoplasty patients include appropriate patient populations to support an indication for moderate to severe acute pain. The agency also confirmed the need for at least 1,100 patients exposed to oliceridine across the development program for the purposes of evaluating safety and tolerability. This database should include a sufficient number of patients with higher exposures and longer durations of oliceridine therapy. *In addition, general agreement was reached on the company's planned clinical, nonclinical, clinical pharmacology, and chemistry, manufacturing and control (CMC) activities to support the planned NDA.*

### Overview of the Oliceridine Phase 3 program

- The oliceridine Phase 3 program includes two pivotal efficacy trials evaluating moderate-to-severe acute pain: the APOLLO-1 study will evaluate pain for 48 hours following bunionectomy, and the APOLLO-2 study will evaluate pain for 24 hours following abdominoplasty. In each trial, patients will be randomized to receive placebo, morphine, or one of three regimens of oliceridine by patient-controlled analgesia (PCA) for the management of their post-operative pain. Each study will enroll approximately 375 patients, allocated equally across study arms.

- The primary endpoint for both APOLLO studies will be a responder analysis proposed by the company comparing active treatment arms to placebo. A responder is defined as a patient experiencing a sum of pain intensity difference (SPID) at the end of the treatment period that corresponds to at least a 30% improvement from baseline without early discontinuation and without rescue pain medication.

6

- Secondary endpoints in both APOLLO studies will include comparisons of oliceridine efficacy, safety, and tolerability to morphine. A respiratory safety endpoint will measure prevalence and duration of hypoventilation, which will be a clinical assessment as in the company's Phase 2b abdominoplasty study.

- The APOLLO study designs were informed in part by the company's Phase 2b abdominoplasty study, which also used PCA dosing. Powering assumptions included similar performance of PCA-administered oliceridine in both APOLLO studies as was observed in the Phase 2b study. In a post-hoc evaluation using the Phase 3 responder analysis, both doses in the company's Phase 2b study in abdominoplasty yielded analgesic efficacy similar to morphine, and significantly higher than placebo ($p \leq 0.0005$ for both oliceridine treatment arms). In addition, using the Phase 3 respiratory safety endpoint, both doses in the company's Phase 2b study showed significantly less respiratory safety burden for oliceridine than morphine ($p \leq 0.0003$ for both oliceridine treatment arms).

- The development program will include at least 1,100 patients exposed to oliceridine. The on-going open-label ATHENA-1 safety study is enrolling patients experiencing pain as a result of either a medical diagnosis or surgery. In this study, patients may receive oliceridine as-needed either as an intermittent bolus or via PCA device, with doses and durations appropriate to manage their pain.

Both APOLLO-1 and APOLLO-2 are expected to start in the second quarter of this year, and the company expects to report top-line data in the first quarter of 2017. The company continues to expect to file an NDA for oliceridine in the second half of 2017. The company also continues to expect that its available cash and investments will be sufficient to fund operations into 2018. (Emphasis added.)

23.     On March 8, 2017, the Company filed its Annual Report for the fiscal year ended December 31, 2016 on Form 10-K (the "2016 10-K") with the SEC, which provided the Company's annual financial results and position. The 2016 10-K was signed by the Individual Defendants. The 2016 10-K also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

24.     Discussing the Company's Phase 3 trials for OLINVO and its discussions with

FDA, the 2016 10-K stated that a "general agreement was reached [with the FDA] on our

planned clinical, nonclinical, clinical pharmacology, and chemistry, manufacturing and control

activities to support the planned NDA." Furthermore, the 2016 10-K stated, in relevant part:

> In January 2016, we initiated the Phase 3 clinical program for OLINVO with the
> enrollment of patients in the ATHENA study, a Phase 3, open label, multicenter
> study evaluating the safety and tolerability of OLINVO in approximately 900
> patients. The study is enrolling eligible patients with moderate-to-severe pain
> caused by medical conditions or surgery. Patients are treated with OLINVO on an
> as-needed basis via IV bolus, patient-controlled analgesia, or PCA, or both, as
> determined by the investigator. The primary objective is to assess the safety and
> tolerability of OLINVO. Pain intensity is being measured as a secondary
> endpoint. As of February 15, 2017, over 400 patients have been treated in the
> ATHENA study, with no apparent off-target or unexpected adverse effects.
>
> ***In the first quarter of 2016, we discussed our Phase 3 development program
> with the FDA at an End of Phase 2 meeting. At this meeting, the FDA agreed
> that pivotal efficacy trials in bunionectomy and abdominoplasty patients include
> appropriate patient populations to support an indication for the management of
> moderate-to-severe acute pain.*** (Emphasis added.)

25.     On March 7, 2018, the Company filed its Annual Report for the fiscal year ended

December 31, 2017 on Form 10-K (the "2016 10-K") with the SEC, which provided the

Company's annual financial results and position. The 2016 10-K was signed by the Individual

Defendants. The 2017 10-K also contained signed certifications pursuant to SOX by the

Individual Defendants attesting to the accuracy of financial reporting, the disclosure of any

material changes to the Company's internal controls over financial reporting, and the disclosure

of all fraud.

26.     In the 2017 10-K, Defendants touted the Company's meetings with the FDA,

stating:

> In December 2015, the FDA granted Fast Track designation to OLINVO for the
> management of moderate-to-severe acute pain. The Fast Track program is
> designed to facilitate the development and review of drugs intended to treat

serious conditions with unmet medical needs by providing sponsors with the opportunity for frequent interactions with the FDA. In February 2016, the FDA granted Breakthrough Therapy designation to OLINVO for the management of moderate-to-severe acute pain. Breakthrough Therapy designation is granted by the FDA to new therapies intended to treat serious conditions and for which preliminary clinical evidence indicates that the drug may demonstrate substantial clinical improvement over available therapies. Breakthrough Therapy designation provides all the benefits of the Fast Track program, as well as more intensive FDA guidance on preparing an efficient drug development program. In January 2018, we announced that the FDA had accepted for review the NDA we submitted for OLINVO. The FDA also indicated that the PDUFA review date for the OLINVO NDA is November 2, 2018 and that it plans to hold an advisory committee meeting to discuss the NDA.

27.     The statements referenced in ¶¶ 22 – 26 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the FDA had not agreed to key elements of the Company's Phase 3 trial for oliceridine (TRV130); (ii) the FDA was unlikely to approve oliceridine (TRV130) based on the Company's Phase 3 trial; and (iii) as a result, Trevena's public statements were materially false and misleading at all relevant times.

<u>**The Truth Begins to Emerge**</u>

28.     The truth emerged on October 9, 2018, when minutes from the FDA's April 28, 2016 meeting with Trevena were released and showed that the FDA:

- "did not agree with the proposed dosing in the Phase 3 studies";

- "did not agree with the proposed primary endpoint"; and

- "did not agree with the proposed non-inferiority (NI) margin for comparing morphine to oliceridine."

9

29.     That same day, the biotechnology industry news website *BioPharmaDive* published an article titled "Trevena shares sink on FDA concerns ahead of key panel meeting," which stated that "Trevena has pitched oliceridine as safer than currently available intravenous opioids, pointing to the drug's mechanism of action as a key differentiating factor. ***Briefing documents from the FDA, however, reveal the agency had not agreed to Trevena's plans to measure oliceridine's impact on respiratory safety burden***." (Emphasis added.) The article addressed the significance of the FDA's prior warning to the Company as follows:

> ***Investors typically pore over FDA briefing documents, which are published by the agency two days before advisory committee meetings***. Staffed by experts, the panels make recommendations to the FDA for or against approval of certain experimental drugs.
>
> Sometimes these documents offer few new insights into the agency's thinking on a particular drug. In this case, it was clear FDA staff had several concerns about Trevena's trial design and results.
>
> For its New Drug Application for oliceridine, Trevena submitted results from three Phase 3 studies — two randomized and one conducted open-label. In both of these trials, the two higher tested doses of oliceridine showed a statistically greater reduction in pain intensity than placebo. (Comparisons versus morphine on this measure were more mixed.)
>
> But key to Trevena's case is the company's claim that oliceridine's more selective mechanism of action makes it safer than conventional opioids, with less respiratory depression and nausea.
>
> On this point, it turns out, the FDA never agreed to Trevena's plans for measuring the superiority of oliceridine to morphine in terms of respiratory safety burden. Further, in both randomized studies, Trevena's drug did not demonstrate a significant lowering in the expected cumulative duration of respiratory safety events versus morphine, FDA staff wrote.
>
> The agency acknowledged that trends did support a decreased percentage of respiratory events with oliceridine versus morphine but only on "some parameters."
>
> ***Respiratory safety burden wasn't the only thing the FDA saw differently than Trevena, either. The documents disclosed the agency had a number of***

*disagreements with the biotech in an April 2016 meeting and a November 2016 teleconference.*

An announcement made by Trevena following the April sit-down gave investors no hints of the differences in view.

Overall, FDA staff were clear that oliceridine offered significant benefits in pain reduction over placebo. But, compared to morphine, the picture painted in the documents is less positive.

"The oliceridine 0.5 mg dose regimen looks to be slightly less efficacious than morphine, but with similar rates of dizziness, hypoxia, nausea, and vomiting," FDA staff wrote. "The oliceridine 0.1 and 0.35 mg dose regimens appear to be even less effective than morphine, with correspondingly lower rates of selected adverse events."

What the 15 voting members of the anesthetic and analgesic drug products advisory committee make of oliceridine in Thursday's meeting will be a key test for the drug. Similarly mixed or negative reviews could spell trouble for Trevena. (Emphasis added.)

30.     Following this news, shares of Trevena's common stock fell more than 64% on October 9, 2018 to close at $1.07 per share.

31.     On October 11, 2018, the Company announced that the FDA denied its New Drug Application for oliceridine.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Trevena securities during the Class Period (the "Class"), and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

33.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Trevena securities were actively traded on the

NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Trevena or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

34.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

35.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

36.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Trevena;

- whether the Individual Defendants caused Trevena to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Trevena securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

12

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

37.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

38.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Trevena  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Trevena securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

39.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

40.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State*

13

*of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

41.     Plaintiff repeats and reallege each and every allegation contained above as if fully set forth herein.

42.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

43.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Trevena securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Trevena securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

14

44.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Trevena securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Trevena finances and business prospects.

45.     By virtue of their positions at Trevena, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

46.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Trevena, the Individual Defendants had knowledge of the details of Trevena internal affairs.

47.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of

Trevena.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Trevena businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Trevena securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Trevena business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Trevena securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

48.      During the Class Period, Trevena securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Trevena securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Trevena securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Trevena securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

16

49.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

50.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

51.     Plaintiff repeats and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

52.     During the Class Period, the Individual Defendants participated in the operation and management of Trevena, and conducted and participated, directly and indirectly, in the conduct of Trevena business affairs.  Because of their senior positions, they knew the adverse non-public information about Trevena misstatement of income and expenses and false financial statements.

53.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Trevena financial condition and results of operations, and to correct promptly any public statements issued by Trevena which had become materially false or misleading.

54.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press

releases and public filings which Trevena disseminated in the marketplace during the Class Period concerning Trevena results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Trevena to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Trevena within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Trevena securities.

55.    Each of the Individual Defendants, therefore, acted as a controlling person of Trevena. By reason of their senior management positions and/or being directors of Trevena, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Trevena to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Trevena and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

56.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Trevena.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands a trial by jury.

Dated: October 15, 2018

Respectfully submitted,

**KASKELA LAW LLC**
D. Seamus Kaskela
201 King of Prussia Road, Suite 650
Radnor, Pennsylvania 19087
Telephone: (484) 258 – 1585
Facsimile: (484) 258 – 1585
Email: skaskela@kaskelalaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
       ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**HOLZER & HOLZER, LLC**
Corey D. Holzer
1200 Ashwood Parkway, Suite 410
Atlanta, GA 30338
Telephone: (770) 392-0090
Facsimile:  (770) 392-0029
Email: cholzer@holzerlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned declares, as to the claims asserted under the federal securities laws, that:

Plaintiff has reviewed the initial complaint filed in this action.

Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows - **List additional transactions on Schedule A, if necessary**:

Purchases:

| Ticker of Company | Date(s) Purchased | # Shares Purchased | Cost/Share |
|---|---|---|---|
| TRVN | 10/5/2018 | 1000 | 3.03 |

Sales:

| Ticker of Company | Date(s) Sold | # Shares Sold | Proceeds/Share |
|---|---|---|---|

During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

None

DocuSign Envelope ID: CDE0EAF2-FBE8-4792-B38E-1998313E288D

Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __11__ day of __October__, 2018 in __Milwaukee__, __Wisconsin__.

City State

(Signature) X_____ _Tony Mastopietro_ _____

588D08F0A33846C...

(Print Name)_____ Tony Mastopietro _____

First Last